IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| KADESISHA JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:23-cv-34-ECM |
| | ) | [WO] |
| SAUGAHATCHEE COUNTRY CLUB, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION and ORDER

Plaintiff Kadesisha Jones ("Plaintiff"), proceeding *pro se*, brought this employment discrimination action against her former employer, Saugahatchee Country Club ("Defendant"). On January 26, 2026, the Magistrate Judge entered a Recommendation that Defendant's motion for summary judgment be granted. (Doc. 77). Plaintiff timely filed objections to the Recommendation. (Doc. 80). After carefully reviewing the record in this case, the Recommendation of the Magistrate Judge, and Plaintiff's objections, the Court concludes that Plaintiff's objections are due to be overruled, the Magistrate Judge's Recommendation is due to be adopted, and Defendant's motion for summary judgment is due to be granted.

### I. BACKGROUND

Defendant hired Plaintiff to work as a banquet server in September 2021. (*See* doc. 69-1 at 17, 50, 69). Despite receiving two raises within five months, (*id.* at 80, 82), Plaintiff reports that her hours began to be reduced shortly after she was hired and that she was

ultimately terminated in February 2022. (*Id.* at 22–23).[1]  According to Defendant, Plaintiff

was terminated for failure to report for several shifts in January and February 2022. (*See*

doc. 70 at 6–7, paras. 30–31; doc. 69-1 at 72 ("[Plaintiff]'s employment was terminated

due to abandonment of her job."); *see also id.* at 63 (Defendant's employee handbook,

which states: "If you fail to notify [Defendant of an absence], we will presume you have

resigned and [you] will be removed from the payroll.")).  However, Plaintiff testified that

she came to work for every shift that she was scheduled for, but that she was often sent

home upon arrival and not permitted to work. (*See id.* at 28 ("If I did come to work, they

sent me home. . . .  [I]f I was supposed to be there in February, I came to work.  I was never

late.  I never got in any trouble.  That's why I kept getting raises.")).  Plaintiff argues that

she was terminated "for no legitimate reason[] besides being black." (Doc. 73-1 at 2).

Plaintiff initiated this lawsuit on January 12, 2023. (Doc. 1).  Her sole remaining

claim is for disparate treatment in violation of 42 U.S.C. § 1981. (Doc. 35 at 4–5; *see* doc.

50).  Defendant moves for summary judgment as to that claim (doc. 68), which Plaintiff

opposes (doc. 73).  The Magistrate Judge recommends that the motion be granted,

concluding that Plaintiff has failed to present sufficient facts to permit a reasonable jury to

conclude that Defendant intentionally discriminated against her. (Doc. 77).  The Court

agrees.

---

[1] From Plaintiff's filings, it is not entirely clear whether she complains solely of her termination or whether she challenges some of Defendant's other actions—for example, reducing her hours, requiring her to change into slip-resistant shoes, and reprimanding her for allegedly stealing food. (*See* doc. 73-1 at 1–3).  However, her objection to the Magistrate Judge's Recommendation is limited in focus to her termination. (*See, e.g.*, doc. 80 at 1 ("Plaintiff suffered an[] adverse employment action (Termination)"); *id.* at 2 (suggesting that her "[t]ermination for alleged tardiness despite lack of progressive discipline" supported an inference of intentional discrimination)).  The Court conducts its analysis accordingly.

## II. LEGAL STANDARDS

After conducting a careful and complete review of the findings and recommendations, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* FED. R. CIV. P. 72.  With respect to non-dispositive matters, the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." FED. R. CIV. P. 72.  For dispositive matters, the district judge must conduct a *de novo* review of any portion of the report and recommendation to which a timely objection is made. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3).  Even in the absence of a specific objection, the district judge reviews any legal conclusions *de novo*. *See Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994); *Ashworth v. Glades Cnty. Bd. of Cnty. Comm'rs*, 379 F. Supp. 3d 1244, 1246 (M.D. Fla. 2019).[2]

Although courts "give liberal construction" to documents filed by *pro se* parties, *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007), *pro se* parties are still "required . . . to conform to procedural rules," *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002); *see Cummings v. Dep't of Corr.*, 757 F.3d 1228, 1234 n.10 (11th Cir. 2014) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981))).

---

[2] Here and elsewhere the Court cites nonbinding authority.  Though the Court recognizes that these cases are nonprecedential, the Court finds them persuasive.

### III.  DISCUSSION

At the outset, the Court questions whether Plaintiff's objections are sufficiently specific to warrant *de novo* review.  However, especially given Plaintiff's status as a *pro se* litigant, the Court will assume without deciding that her objections were sufficiently specific and, accordingly, will review the portions of the Recommendation to which she appears to be objecting *de novo*. *See Chowdhury v. Saxon Mortg. Servs., Inc.*, 2011 WL 13318739, at *2 (N.D. Ga. June 28, 2011) ("[I]n recognition of Plaintiff's status as a *pro se* plaintiff, the Court will respond to these objections to the extent reasonably possible and review those portions of the [report and recommendation] to which Plaintiff appears to be objecting *de novo*.").

Section 1981 "prohibits employers from intentionally discriminating on the basis of race in employment contracts." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023) (citing *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975)). "Faced with a defendant's motion for summary judgment, a plaintiff asserting an intentional-discrimination claim under . . . § 1981 must make a sufficient factual showing to permit a reasonable jury to rule in her favor." *Lewis v. City of Union City*, 918 F.3d 1213, 1217 (11th Cir. 2019) (en banc).  Absent direct evidence of discriminatory intent—the sort of smoking gun evidence that a plaintiff will rarely have, *see Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir. 1987)—a plaintiff may satisfy this burden in two ways. *Lewis*, 918 F.3d at 1220 & n.6.  She can either "satisfy[] the burden-shifting framework set

out in *McDonnell Douglas*,"[3] or she can "demonstrate a 'convincing mosaic' of circumstantial evidence that warrants an inference of intentional discrimination." *Id.* The Magistrate Judge concluded that Plaintiff had done neither. (Doc. 77 at 7–12). Plaintiff objects, arguing that she has presented sufficient evidence to satisfy both. (Doc. 80 at 1–2). As explained further below, Plaintiff's objections are due to be overruled.

**A.     *McDonnell Douglas***

Plaintiff cannot satisfy *McDonnell Douglas* because she has not identified a suitable comparator, and therefore she fails to satisfy her *prima facie* case. Plaintiff bears the burden of identifying a comparator with whom she was "similarly situated in all material respects." *Lewis*, 918 F.3d at 1224. Generally, a proper comparator will have "engaged in the same basic conduct as the plaintiff," "been subject to the same employment policy, guideline, or rule as the plaintiff," "been under the jurisdiction of the same supervisor as the plaintiff," "and share[d] the plaintiff's employment history." *Eliassaint v. RTG Furniture Corp.*, 551 F. Supp. 3d 1293, 1303 (M.D. Fla. 2021) (quoting *Lewis*, 918 F.3d at 1226, and *Earle v. Birmingham Bd. of Educ.*, 843 F. App'x 164, 166 (11th Cir. 2021)).

As the Magistrate Judge observed, however, Plaintiff merely "speculates" that "unlike her, [w]hite employees were" afforded various forms of preferential treatment, without "identify[ing] any employee—either by name or sufficient description—who experienced such preferential treatment." (Doc. 77 at 8). In her objection to the Recommendation, Plaintiff cursorily asserts that "similarly situated employees outside

---

[3] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[her] race were treated more favorably via Dress code policy, as evidenced by earlier submitted photo'd documentation exhibit #3." (Doc. 80 at 1).[4] But Plaintiff's objection suffers from the same flaw that her response to Defendant's motion for summary judgment did—it fails to properly identify a single comparator. Her suggestion that unnamed white employees "were treated more favorably" is not enough. (Doc. 80 at 1); *see Piquion v. Walgreen Co.*, 369 F. Supp. 2d 1339, 1346 (S.D. Fla. 2005) (concluding that the plaintiff had not satisfied the comparator requirement where he "offer[ed] nothing more than conclusory statements that no other employee was treated the same way"); *LeBlanc v. TJX Cos.*, 214 F. Supp. 2d 1319, 1326 (S.D. Fla. 2002) (concluding that the plaintiff had not satisfied the comparator requirement where he "fail[ed] to indicate specific instances or individuals to support his assertions, relying solely on his conclusory allegations"). And her argument that her failure to identify a proper comparator "does not constitute that no such employee existed" does not change the Court's conclusion. (Doc. 80 at 3); *see Lewis*, 918 F.3d at 1217 ("Under [*McDonnell Douglas*], the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by proving, among other things, that she was treated differently from . . . a comparator." (quotation omitted)). In short, Plaintiff's untethered speculation that a proper comparator exists is insufficient to satisfy her burden of demonstrating a *prima facie* case of race discrimination. *See Earle*, 843 F. App'x at 166 ("A plaintiff's failure to produce evidence showing that a single similarly situated

---

[4] "[E]xhibit #3" appears to refer to a photo (designated "Plaintiff's Exhibit 4") attached to Plaintiff's first amended complaint. (Doc. 9-4 at 1). Whatever Plaintiff hopes this photo conveys, to the extent she proffers it as evidence of a comparator, this photo—absent any context, analysis, or argument—does not satisfy that requirement.

employee was treated more favorably will preclude the establishment of a prima facie case [under *McDonnell Douglas*].").

## B.    Convincing Mosaic

Plaintiff also has not shown a convincing mosaic of intentional discrimination. "[D]espite its flowery language," this standard is simply "a stand-in for the Rule 56 summary judgment standard applied to employment discrimination." *Ismael v. Roundtree*, 161 F.4th 752, 760 (11th Cir. 2025).  Accordingly, "[a]s in other contexts, a plaintiff may avoid summary judgment" under the convincing mosaic standard "by presenting a wide range of circumstantial evidence," including "suspicious timing, ambiguous statements," "systematically better treatment of similarly situated employees," and "that the employer's justification is pretextual." *Id.* (quotation omitted).

In her objections, Plaintiff argues—absent citation to the record, supporting authority, or analysis—that she has "presented circumstantial evidence forming a convincing mosaic of discrimination," citing the fact that she received raises, that she was "remov[ed] from the schedule without warning" and terminated "for alleged tardiness despite [a] lack of progressive discipline," that she was replaced by "someone outside [her] protected class," and that she had submitted sworn testimony "contradicting [D]efendant['s] characterization" of her termination. (Doc. 80 at 2).  Again, the Court questions whether these objections are sufficiently specific to warrant *de novo* review. *See McCullars*, 825 F. App'x at 694; *Brown*, 2016 WL 11578091, at *2 ("[C]onsideration of general and perfunctory objections under a de novo standard would reduce the magistrate's work to something akin to a meaningless dress rehearsal." (quotation omitted)).

7

Nevertheless, on *de novo* review, the Court finds that Plaintiff's deposition testimony creates a genuine dispute regarding Defendant's stated reason for terminating her.  Defendant contends it fired Plaintiff because she "stopped reporting to work in February of 2022," (doc. 70 at 7), and submitted records showing that Plaintiff did not clock in for seven shifts in January and February 2022, (*see* doc. 69-1 at 157, 159, 162, 175, 178, 181, 182, 195–200).  But Plaintiff testified that she did appear for her scheduled shifts in January and February.

> A:    I didn't even work in February.  I was on the schedule but I didn't even get a chance to work.
>
> Q:    Why not?
>
> A:    They sent me home when I was scheduled and they just completely took me off the schedule. . . . [I]f I was on the schedule, I would drive to Phenix City to work.  Go home, we're good.  We've got a lot of servers today or a party canceled.
>
> . . .
>
> Q:    So all we know is that this paperwork shows that you were still on the schedule in February?
>
> A:    Uh-huh.
>
> Q:    But you were not coming to work in February?
>
> A:    Yeah.  If I did come to work, they sent me home.
>
> Q:    Okay.
>
> A:    If I was supposed to be there—if I was supposed to be there in February, I came to work.  I was never late.  I never got in any trouble.  That's why I kept getting raises.
>
> . . .

> Q:    So if Jamica [Thomas[5]] previously told us that you just stopped coming to work even though you were on the schedule, you don't agree with that?
>
> A:    I do not agree to that.
>
> . . .
>
> Q:    If I told you you were on the schedule for January 10th and January 16th and you don't show up, would you have any reason to dispute that?
>
> A:    Yes.
>
> Q:    What evidence do you have to dispute that?
>
> A:    I wasn't written up.  I wasn't punished.  I wasn't anything.  If I was on that schedule, I was supposed to be there, I was there . . . .

(*Id.* at 27–28, 41).  Moreover, Plaintiff's testimony is consistent with the documentary evidence Defendant provided.  Defendant's records only show when Plaintiff was scheduled and when she clocked in—but if Plaintiff was prevented from working, as she testified, then there would be no record of her having clocked in.

That's not where the conflicts end.  David Weiss, Defendant's general manager, provided a declaration that he learned Plaintiff "was not reporting for her scheduled shifts" from Thomas. (Doc. 69-1 at 72).  In light of this information, he told Thomas to stop putting Plaintiff on the schedule, which ultimately resulted in Plaintiff's termination for "abandonment of her job." (*Id.*).  Thus, Weiss in effect declared that he did not know Plaintiff was reporting for her scheduled shifts but was prevented from clocking in. (*Id.* ("I

---

[5] Jamica Thomas was Plaintiff's direct supervisor. (Doc. 69-1 at 18).

told Thomas that if [Plaintiff] was not reporting for her scheduled shifts, Thomas should

no longer place [Plaintiff] on the schedule . . . .")).  But Plaintiff testified that Weiss was

the one sending her home.

> A:     Even though I am still on the schedule, it says I'm still on the schedule, I don't remember working in February because if I were supposed to work in February, I was sent home.  And, like I said, the schedule was changed.
>
> Q:     And it was always David [Weiss] that sent you home?
>
> . . .
>
> A:     Yes.

(*Id.* at 30).  Construing the record evidence in the light most favorable to Plaintiff, a

reasonable jury who believed Plaintiff's version of events could find that Defendant's

stated reason for terminating her was not worthy of credence. *See Gogel v. Kia Motors*

*Mfg. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) ("[T]o establish pretext at the

summary judgment stage, a plaintiff must demonstrate such weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate

reasons for its action that a reasonable factfinder could find them unworthy of credence."

(quotation omitted)).

But Plaintiff also bears the burden to proffer evidence that would permit a

reasonable jury to infer that *race discrimination* motivated Defendant. *See Ismael*, 161

F.4th at 760 ("[A] triable issue of fact exists if the record, viewed in the light most favorable

to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow

a jury to infer intentional discrimination by the decisionmaker." (quotation omitted)); *see*

*also McCreight v. AuburnBank*, 117 F.4th 1322, 1335 (11th Cir. 2024) ("This final question of pretext merges with the plaintiff's ultimate burden of persuading the factfinder that she has been the victim of intentional discrimination." (quotation omitted)).   A showing that Defendant may be "lying about the true reason for her termination" is insufficient, without more, to satisfy that burden. *See Phillips v. Legacy Cabinets*, 87 F.4th 1313, 1325 (11th Cir. 2023) ("It is not enough[] . . . for [the plaintiff] to prove that [the defendant] is lying about the true reason for her termination; to escape summary judgment, she must produce sufficient evidence for a reasonable jury to find that the true reason was discrimination.").   As explained further below, Plaintiff has not proffered sufficient evidence to support a reasonable inference of race discrimination.

In her objections, Plaintiff argues that a convincing mosaic of discrimination exists because she was fired without reason, as demonstrated by "[s]worn witness testimony contradicting [D]efendant['s] characterization," the fact she had received raises, her "[s]udden removal from the schedule without warning," and that Plaintiff was terminated "for alleged tardiness despite [a] lack of progressive discipline." (Doc. 80 at 2).   These facts are insufficient to permit a reasonable jury to conclude that Defendant's true motivation in terminating Plaintiff was race discrimination.   And though Plaintiff also argues that she was replaced "by someone outside [her] protected class," (*id.*), this fact alone—if it is a fact—is not enough to support the logical inference that she was terminated on the basis of her race. *See Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1019 (11th Cir. 2023) ("Being replaced by someone outside one's protected class can help to establish the

prima facie case of discrimination for burden-shifting purposes.  But it is not enough to carry the day on the substantive question of discrimination." (internal citation omitted)).

Though Plaintiff does not reference it in her objection, she also testified that Defendant Weiss once sent Plaintiff home due to her hairstyle, saying that it was "too much" and "a little ghetto,"[6] and that another time he told Plaintiff that her natural hair did not "look good" or "fit right." (Doc. 69-1 at 35, 38).  She likewise testified that Weiss made at least one other racially insensitive comment. (*Id.* at 38 ("[Weiss]'s the one that was, like—I know you want some watermelon.  You heard watermelon make your hair grow, all kind of little stupid stuff.")); *see Lewis v. Metro. Atlanta Rapid Transit Auth. ("MARTA")*, 2008 WL 11333377, at *16 (N.D. Ga. Aug. 1, 2008) (noting that "there is a historical and pernicious stereotype associating African Americans with watermelons" and collecting "numerous references to this stereotype in case[]law throughout the United States").   While racial remarks can constitute circumstantial evidence of race discrimination, "stray comments unrelated to the adverse employment action at issue, absent more, are insufficient to survive summary judgment." *McCray v. Fla. Gypsum, LLC*, 2025 WL 1489826, at *11 (M.D. Fla. May 23, 2025); *see Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002) ("Because [the comment allegedly made by the plaintiff's supervisor] was (looking at the admissible evidence before the district court) an isolated comment, unrelated to the decision to fire [the plaintiff], it, alone, is insufficient to establish

---

[6] Though Plaintiff could not recall if she was already about to head home when Weiss sent her home. (*See* doc. 69-1 at 39 ("I don't remember if I was fixing to go home or how long I had been there but I know I had been there for awhile already.  I don't know if I was going to get off but I know I did go home. . . .  I don't remember good but from what I remember, I don't think I was done with my shift . . . .")).

a material fact on pretext."). Therefore, Weiss' alleged comments, while insensitive and offensive, are insufficient on this record to assist Plaintiff in meeting her summary judgment burden.

Plaintiff also relies on Thomas' declaration, in which Thomas stated that Weiss asked her to remove Plaintiff from the schedule "multiple times for other girls" and that Weiss sent Plaintiff home "without explanation many times." (Doc. 73-1 at 18).[7] And Plaintiff appeared to testify that Weiss sent Plaintiff home while giving her shifts to unnamed white workers.

> A:     [I]t went from these girls asking me every day, Can I take this shift, or Can I take that shift, or Oh, I needed my shift. Then they will go into the office and be like, Oh, I need some more hours. The next thing you know, they will go in the office and then come back out or come to work for days that I'm scheduled. Then when I come back, they're not even scheduled. They're there and I would have to go home.

(Doc. 69-1 at 25). Later in her deposition, Plaintiff testified that Weiss provided this preferential treatment to a specific white employee with whom he had a sexual relationship. (*Id.* at 29). However, when describing a similar situation involving another African-American employee, Plaintiff expressly stated that this preferential treatment was due to

---

[7] In response to Defendant's motion, Plaintiff also submitted two "transcripts" and the declaration of Nykeria Dowell. (Doc. 73-1 at 5–16). The Magistrate Judge did not consider these documents as evidence. (Doc. 77 at 3 n.2). The "transcripts"—which appear to be Plaintiff's personal transcription of an audio conversation—are neither signed nor sworn. (*Id.* at 5–14). And though Ms. Dowell's declaration is signed, it is not notarized, nor does it include any language for it to properly be considered a sworn declaration made under penalty of perjury. *See* 28 U.S.C. § 1746; *Brown v. Delta Air Lines, Inc.*, 2023 WL 11904076, at *5 (N.D. Ga. Sep. 20, 2023) (concurring with the magistrate judge's refusal to consider an "affidavit because it was not notarized and did not indicate it was a sworn statement made under penalty of perjury"). Plaintiff does not object to the Magistrate Judge's decision not to consider these materials, and the Court does not revisit it.

Weiss' sexual relationship with the white employee—not race discrimination. (*Id.* at 30 ("[Weiss] made [Thomas], the black lady, the supervisor, come back to work and work while the employee that's under her[] . . . *because he was sleeping with her*, he let her go off and ma[d]e [Thomas] come back." (emphasis added))). Plaintiff's own testimony therefore undercuts the inference that Weiss was motivated by race discrimination. *See Tynes*, 88 F.4th at 944 ("[A]n employer can generally fire or discipline an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, so long as that action is not for a discriminatory reason." (quotation omitted)); *cf. Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 n.25 (11th Cir. 2011) ("[A]n inference[] is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact . . . ." (first and third alterations in original) (quotation omitted)).

In sum, the Court concludes that the foregoing incidents, if believed, are not enough to support an inference that Defendant was motivated by unlawful race discrimination. Because there is not sufficient "evidence on which the jury could reasonably find for [Plaintiff]," Defendant is entitled to summary judgment. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1321 (11th Cir. 1999). Accordingly, Plaintiff's objections to the Magistrate Judge's Recommendation are due to be overruled.[8]

---

[8] The Magistrate Judge found that Plaintiff's proffered evidence of a convincing mosaic was based on Plaintiff's "speculation," and that Plaintiff provided "no actual evidence to support [her] vague and unsupported allegations" that, for example, Weiss made an insensitive comment about her hair. (Doc. 77 at 11). But Plaintiff testified that Weiss made the insensitive comment about her hair, and Plaintiff's own testimony is evidence. *Cf. Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1160 (11th Cir. 2012) ("[E]ven in the absence of collaborative evidence, a plaintiff's own testimony may be sufficient to withstand summary judgment."). Ultimately, however, the Court agrees that Plaintiff marshalled insufficient

## IV.  CONCLUSION

For the reasons stated, and for good cause, it is

ORDERED as follows:

1.      Plaintiff's objections (doc. 80) are OVERRULED;

2.      The Recommendation of the Magistrate Judge (doc. 77) is ADOPTED;

3.      Defendant's motion for summary judgment (doc. 68) is GRANTED;

4.      All pending motions are DENIED as moot, and all pending deadlines are TERMINATED;

5.      This case is DISMISSED with prejudice.  A separate Final Judgment will be entered.

DONE this 16th day of March, 2026.

                    /s/ Emily C. Marks
                    EMILY C. MARKS
                    UNITED STATES DISTRICT JUDGE

---

evidence from which a reasonable jury could conclude that Defendant was motivated by unlawful race discrimination when it terminated her.  With that clarification, the Magistrate Judge's Recommendation is due to be adopted.

15